Lead us off and maybe let us know if you want to reserve some time for rebuttal. Good morning, Your Honor. May it please the Court. Jamie Halper on behalf of Jabri Bennett and if I may reserve two minutes, please. The prosecutor in Jabri Bennett's case struck prospective juror Dominique Jones in substantial part because he was black. The prosecutor repeatedly offered purported reasons contradicted by the record for striking him and the trial court piled on with inaccurate facts and with legal errors contrary to clearly established Supreme Court precedent. Despite this, the California Court of Appeal turned a blind eye to the racial animus underpinning this strike. But the prosecutor had been clear that he would accept one and only one black juror and once that juror was seated, Mr. Jones had to be struck. Did the Court of Appeal rely on that aspect of the selection? Yes, Your Honor. So with respect to the powerful evidence standard that the trial court credited with the fact that there was one seated black juror, the Court of Appeal was clear that its position was that that was acceptable under California law and that the judge had been appropriate. Well, doesn't it in footnote six of the disclaim any reliance on that point and said it would reach the same result? It says it would reach, it says that it was not an inappropriate consideration and that even I believe it says among many other factors it concluded this, but it doesn't separate out the fact that it was still weighing this just in an appropriate manner. So it was more taking issue perhaps with the powerful evidence degree and saying that even if this were not considered powerful evidence but just one factor among many it would be appropriate, but the Supreme Court has been clear that this is actually a suspect consideration and not even something that should be considered appropriately. Well, they seem to go farther than that. They say even if we were to assume that this amounted to legal error, I think they concede your point and then say they'd reach the same decision anyway with respect to the two other pieces on the juror questionnaire which might be the focus of your remarks going forward. Absolutely. Well, I would be happy to turn to the sua sponte error. So the trial court also provided its own reason approving of the strike of Mr. Jones even though the Supreme Court has been clear that a baton determination is not an exercise in a court thinking up any rational basis and on top of that the trial court's reason was actually false. Again, it seems like you're asking us to review the trial court decision which Congress says we don't do. So the Court of Appeal accepted that reason when it was articulating the basis that the trial court offered. It noted that the trial judge made this sua sponte reason and it sort of accepted it in sum. It didn't separate out whether it would still uphold the strike absent this sua sponte consideration offered by the trial court and considering this altogether and not parsing it is the error that the Supreme Court indicated courts cannot engage in and it would entitle Mr. Bennett to de novo review of the claim. Well, Ms. Halper, let's assume for sake of argument that we are able to, again focusing on the questionnaire issues, the jurors views on the criminal justice system and the jurors family involvement with the criminal justice system. Would it be sufficient under Batson and I think the flowers test where it says where it's motivated in substantial part where you're looking at the strike you're not right as I understand we don't look at the individual reasons for the strike where what the Supreme Court has told us is we're looking at whether the strike itself was motivated by race. Would it be enough if for sake of argument we determined that the familial involvement mistake was not material and sufficient grounds? Would that be enough to sustain the strike and if the other aspects taint it, how? So even if the court were to find that the familial mistake wasn't sufficient, was not inappropriate or not an issue, the substantial part standard requires that we look at all of the reasons and given the fact that the prosecutor gave the opposite reason or the opposite statement of what Mr. Jones wrote in his questionnaire with respect to his views on the criminal justice system, that itself is evidence of the animus. Can I address that because you said it was the opposite reason and I thought about a little bit I mean I'm not sure that I would agree that's necessarily an opposite reason because somebody said that I think that sometimes the criminal justice system gets things wrong but more often it gets it right. I mean it could be that could be like a 40-60 split, right? 60% of the time it gets it right, 40% of the time it gets it wrong. And then that the prosecutor's statement that more often than not it gets it wrong could be 60-40 the other way, which is only 20% difference, right? So it's not as I read your brief and it talked about it being the opposite but it there is a difference obviously but I'm not sure if I if I follow you that it's the opposite in the sense that like it could be relatively close it's just you know one could be slightly one side of 50% and the other the other side so is it really the opposite? We would submit that it's the opposite because it's important to hear that this was apparently a very important reason to the prosecutor for striking Mr. Jones. He framed his entire Batson discussion before he even got... That kind of good that's my question you know if let's say he theoretically thought it 45% of the time this system gets the answer wrong and and and you're right he thought it's very important the prosecutor to strike him because he for some reason thought it was 55% of the time but there's not this reason that the prosecutor thinks is very important he's not that wrong about I mean under this type of numbers I'm putting in I'm trying to make you know if if he still thinks a significant number amount of the time it gets the answer wrong he's not that he's not that wrong does that make sense it's not that the prosecutor is wrong but he's not that wrong. So Miller L indicates that you don't actually have to provide the opposite reasoning from what a voir dire or a that was the issue in Miller L with respect to a jurors position on whether he could impose the death penalty in that case and similarly here even though we would argue that it is the exact opposite even if it's somewhat wrong it is a mischaracterization and it's important that the prosecutor never questioned Mr. Jones. But it's also true that mischaracterizations can be sometimes you can mischaracterize something and it's and it does not result in a rise to the level that would and then it seems like what it turns on is is whether the mischaracterization you know whether the general you know similar you know even your mischaracterize it but but it's not completely incorrect and here if they are if they could be close how and we kind of defer to the state court how could how would it fit into the idea that has to be completely wrong as opposed to just sort of a not getting it quite right off a little bit. This position is in the broader context of all of the issues with the reasons that the prosecutor gave and his broader statements about his approach when he was taking part in the Batson Colloquy. So for one thing he indicated that he would swap the seated black juror and the alternate juror which raises the suggestion you know he never suggested that he would swap the black alternate in for a non-black seated juror. He was really willing to make the one-for-one. So it sounds like just because we don't have a lot of time it sounds like that's more where you know that's what you see as the biggest error that requires that supports the bad. The other errors are it's all of the circumstances. It's his fixation on arguing that Mr. Jones was not in fact black when there was no evidence. It was the fact that he questioned for example juror 7 who wrote that he found or that he believed that there were racial differences in the legal system. He gave him an opportunity to explain his position and he never gave Mr. Jones the opportunity to explain that position. The cases are clear that disparate questioning and failing to question a person about the basis of a strike is evidence of pretext and so it's no individual reason. It is all of the reasons taken together where it is objectively unreasonable for the Court of Appeal to have said that there was not racial animus underpinning this strike. Looks like we're taking you down your time. Let me make sure my colleagues don't have any questions. Well I had just one quick question. You indicated that you feel the trial court erred by providing its own sua sponte justification. Did the state appellate court rely upon that in its decision? It credited that reason and it did not separate out whether it would have upheld the decision absent that sua sponte basis and therefore it must be taken to have relied on that reason and so the only remedy would be to then review de novo the Court of Appeals decision in order to separate that justification out and reconsider the case without that piece of information. All right we'll make sure you got some time for you but let's put two two minutes on there. We definitely took you over. We'll hear from the government. You might address first off is this question of the sua sponte and particularly how the Court of Appeals the way the Court of Appeals addressed the district courts extra reason that it kind of tacked on and whether or not how we should evaluate that if you don't mind. If I may, may please the Court, Masha DeVisa for respondent appellee. Yes, Your Honor. So as an initial matter, I would like to state that the specific extra reason that the trial court may have offered under Flowers completely fits within the framework of were the totality of the circumstances considered by the Court of Appeal in considering the step three of the Batson analysis sufficient. Did it show purposeful discrimination on the basis of race? It did not. The court's stated reason potentially contributes to the fabric of what the court was considering of how it considered the prosecutor's credibility, how it can consider the prosecutor's specific rationale for excluding Dominique Jay compared to some of the other jurors. And so I would submit that the trial court statement about the powerful evidence simply was a reflection of its determination of the prosecutor's of the prosecutor's rationale in light of. There's some tension it seems like between the fact that you need to rely on the reasons given by the prosecutor. Correct. But you also need to look at totality of things. I think it towards the end of your colleague on the other side's argument, she brought up something, I'm forgetting what it was now, but something that the prosecutor, that something that the prosecutor had said that the trial court didn't rely on or anything. And so we since we have to take into account the totality of the circumstances and the courts need to take that into account in theory, I suppose that they would be touching on some things that the prosecutor didn't give just to sort of fill out and get the holistic picture. But there's some tension there in that they aren't supposed to be adding reasons that the prosecutor didn't give. So it sounds like your position is this is just filling out the picture, not an additional reason. Is that correct? What we are here to do is to determine whether the court, the state court's determination of the Batson claim was unreasonable in light of the entirety of the court record. And so what the court, what the trial court said or didn't say, and you know as your Honor noted in the footnote, the Court of Appeal went on and on saying that there are so many other reasons why the Batson claim was absolutely not, could not stand. The petitioner did not meet his burden to demonstrate purposeful discrimination. So the fact that the trial court gave its own reasons is, I would submit, irrational. And under Rice, you know, reasonable minds can differ whether something was or was not relevant. I guess, Ms. DePisa, does the state argue that it's not contrary to Batson for a trial court to view black jurors as fungible? That if you, you can swap one black juror for another? That is not our position. That is not being argued here. That is not an issue here. But I think that's, that's what the trial court did here. The trial court also said, it seems, again let me know whether you think this is consistent with Batson, that it would, that it basically made clear to the prosecutor that we're only going to assess the total jury make-up at the end of the process, which then creates, as I hope you recognize, some incentives for gamesmanship in terms of, well, if we have enough, if we're able to have one black juror but not another, how is that permissible under Batson? It is not permissible under Batson, but that's not what occurred here. And isn't that what the trial court, the trial court said that at the outset, that we're going to assess it at the end, we're going to look at the entire make-up? The court, the, first of all, the court of appeal here did not rely on the trial court statement that it was going to conduct some sort of statistical Miller-Ell type analysis of, oh, do we have enough jurors or do we not have enough jurors? The court of appeal here very clearly focused on the specific claim at issue here, which is whether Dominique Jay specifically was struck for a prohibited reason under the 14th Amendment. And the court of appeal, the state court here found that the petitioner did not sustain his burden to prove purposeful racial discrimination. And that is what we are looking at here. We're looking at whether that particular Batson claim has been sustained by the petitioner. Well, that sounds like something different than the totality of the circumstances analysis he led with. Well, the totality of the circumstances analysis focuses on the specific struck juror here, not on, we're not, we're not backing up and we're not, you know, stepping into the shoes of the trial court to see if we get to reweigh the evidence and we get to relook at the racial composition of the jury. That's not what we're doing here. We're focused on the very specific determination by the state court, considering all the evidence before it, of whether the Batson claim has been sustained. And we're, you know, we're conducting a highly, highly deferential review under the ADPA to determine whether the court's, whether the court's determination was objectively unreasonable. And it was not here. And we don't get to reweigh, you know, at the, at the voir dire stage, we don't get to reweigh the court's reasoning. Well, I, I take your point that we were focused here. And, and so for example, the, the court of appeals seems to be suggesting that the family involvement with the criminal justice system was a sufficient reason. Assuming that that's a, that's a sufficient non-pretextual reason, are we allowed, or is the court of appeals allowed to rely on that factor to the exclusion of, of all of the other assertions of pretext? Does one good reason under Batson or under Flowers cancel out all the other suspect reasons? As an initial matter, yes. However, there was not just one reason. There was, you know, first of all, Dominique Jay not just had a familial relationship, but Dominique Jay also very specifically stated in voir dire and in questionnaires that the criminal justice system questioned, quote, whether the criminal justice system works for the most part. And the court then went... Right, but the court, you can't lean on that because the court of appeals itself distanced itself from that. It said on a comparative juror analysis, we had other jurors who expressed similar misgivings about the criminal justice system. So that kind of cancels out, doesn't it? Absolutely not, Your Honor. I would push back on that because the a comparative juror analysis and looked at juror 12, juror 9, juror 7. There were several jurors who the court considered the extent of their statements about the criminal justice system. None of the other jurors had a close familial relationship with an individual who had been convicted. Well, that's just my point though, right? So if we, if for sake of argument, the prosecutor in the district court unreasonably misread the statement about the jurors' views about the criminal justice system, and then you do this comparative thing where the only difference now is the family involvement. Does that, can we just then disregard that misreading of the jurors' views on the criminal justice system, which let's assume for sake of argument it was? I'm not sure I'm comfortable making several assumptions in a hypothetical where we have two very clear rationales for why this particular juror had extreme skepticism about the criminal justice system and a close familial relationship. Extreme skepticism about the criminal justice system? It's fair for the most part. I mean, if you... Question whether the criminal justice system was fair for the most part said not interested in the criminal justice system. And again, Your Honor, as compared to the other jurors, yes, it absolutely set Dominique Jay apart. Dominique Jay was not set apart by virtue of... I don't think that, I guess that's not, just to zoom in on the Court of Appeals reasoning, I don't understand that's what it's saying, and I think this is a point in the state's favor. As I understand, and this is at ER 4243, pages 20 and 21 of the Court of Appeals decision, it seems to be saying there were other jurors who expressed similar misgivings about the criminal justice system, but what distinguished Juror Jones was the other, the familial involvement. I'm looking at footnote seven of the Court of Appeal opinion where the state court wrote, indeed, the record supplies additional reasons to conclude that Dominique Jay was not similarly situated to these jurors because in addition to the two reasons for the challenge advanced by the prosecutor, Dominique Jay had also been convicted of a crime and further appears to have had issues with one witness rule and expressed lack of interest in the criminal justice system, et cetera, and there were many race neutral reasons why his inclusion on the jury might have been troubling to the prosecutor. And I would submit that that statement by the state court is not unreasonable under D2, under section 2254 D2 of the AEDPA, and is subject to a lot of deference by this court. Do you think you win if we rely solely on its statements that later on, and of course, as you know, in habeas review, our question is if we can read it to be reasonable, we must. Do you think if we rely solely on the familial involvement as a distinguishing factor and as a non-protectual basis at step three that you win under that? I'm not sure the court must, but if the court wishes to rely solely on the familial distinction, I would submit that that is definitely sufficient and supports the supreme, I'm sorry, supports the state court's determination because Dominique Jay did not simply have a that he was close to, he visited her three separate times. And is Flowers the best case on that, or what do you think the best case is that we can take one good reason and parse it from what we may believe are suspect reasons? Well, I would, first of all, I would submit to your honor that Snyder supports that the prosecutor's rationale, even of just that one reason of a familial relationship, is consistent with the record, right? The prosecutor did not make up a reason and rely on that reason in a pretextual way. Second of all, I would submit that even, for example, in Perkett v. Ellum, a case where the court found, the United States Supreme Court found that striking a juror, quote, because he had long unkempt hair and a mustache and a beard was sufficient and race neutral and satisfied Batson's review. And here, I would submit that having a close familial relationship with a woman whom Petitioner visited three separate times in prison as she served her term and whom he spoke to after her incarceration, after she was released, with whom he, quote, he stated, I stated there at the time, it's not clear where exactly that was, but he clearly was very close to her, unlike any other member of the jury. And this, just to be clear, we're talking about the juror, not the Petitioner here? We're talking about, I'm sorry, yes, I'm sorry, Your Honor. We're talking about Dominique Jay, who was very close to his aunt. And I would say closeness to the aunt, visiting the aunt in prison as she served, as she served time for several years, speaking to the aunt, and subsequently expressing skepticism about the criminal justice system, is certainly more of a rationale than having long, unkempt hair. And so, yes, that would be a sufficient reason to uphold the state court's determination as... Well, thank you, Counsel. We've taken you several minutes over. Unless either of my colleagues have further questions, we will allow the other side to have their two minutes over. Thank you, Your Honors. I submit. Just two brief additional comments. First, under Snyder's substantial part standard, it's clear that the defendant need not prove that all of the reasons were pretextual. But with respect to the aunt in prison issue, it's an incredible basis in and of itself, because the aunt went to prison for a handful of years for drug trafficking, and Mr. Bennett was on trial for murder and attempted murder. These are not similar circumstances. In addition to that, immediately following the... That argument's a little bit like saying somebody with unkempt hair is not a good reason to... But that's not really our inquiry, right? Our inquiry isn't whether the reason, if it's a sincere reason, was a sufficient reason, because prosecutors can have a dumb reason. It's just our inquiry is whether or not it's pretextual. Is that right? Certainly. And all of the additional surrounding circumstances... But I don't know if I'd visit my aunt if she was in prison three times. Obviously, it's fairly close to her, so it doesn't sound like a pretextual reason. It sounds like he's... It sounds like kind of a unique, very close relationship with this family member. Well, he was clear that it would have no effect on him in this case, and nobody suggested that he wasn't trustworthy for some reason. But again, it's not... Maybe not. But if the question is whether that's a pretextual reason as opposed to... And I guess your argument would be that it's such an absurd inference to draw that it would have an effect on him, that it's got to be pretextual. Is that your argument? Yes, it's pretextual, and it need not be in order to find for Mr. Bennett in this case. Additionally, I wanted to just clarify quickly the Court of Appeals position on considering this presence of seated black jurors was it said that even if the trial court improperly inflated that, which was really a reference to California law, which perhaps allowed it, but not as substantially as the court used it. But in reality, the Supreme Court's position is that that should be treated skeptically. And so to consider it at all, even in a deflated way, but to not treat it skeptically itself is a legal error that is contrary to Supreme Court precedent. And the whole was designed around the importance of this. So it's also a factual error on the part of the Court of Appeal to find that it had not been improperly inflated because the trial court was clear that the entire reason he conducted the Batson Colloquy in the way he did was because the most important factor to him was the ultimate composition of the jury. Well, thank you, counsel. Thank you to both sides for your argument this morning. The case of Bennett v. Lynch is now submitted.
judges: VANDYKE, JOHNSTONE, Christensen